UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOY TRUESDALE, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 07 C 3058 |
| ) | |
| ) | Judge Virginia M. Kendall |
| SGT. LAURA GUERRA, CHARLES BARTH ) | |
| WILLIAM VERBURG, SGT. TOM LYNCH, ) | |
| SGT. BIANCI, JASON FORD, AND ) | |
| THE TOWN OF ORLAND PARK ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Joy Truesdale ("Truesdale") filed suit under Title 42 U.S.C. § 1983 and the Americans with Disabilities Act ("ADA") against Defendants Sgt. Laura Guerra ("Guerra"), Charles Barth ("Barth"), William Verburg ("Verburg"), Sgt. Tom Lynch ("Lynch"), Sgt. Bianci ("Bianci"), and Jason Ford ("Ford") (collectively "the Individual Defendants"), and the Village of Orland Park ("Orland Park").[1] In separate motions, Defendants Guerra, Verburg, Lynch, Bianci, Ford, and Orland Park moved to dismiss Truesdale's claims under 42 U.S.C. § 1983 claim. Orland Park moved to dismiss Truesdale's ADA claim. For the reasons stated herein, Defendants' Motions to Dismiss are granted and Truesdale's Complaint is dismissed in part without prejudice.

Procedural History

Truesdale filed her Complaint on May 31, 2007. Dk. # 1. Shortly after both parties' attorneys entered appearances on their behalf, Orland Park sought sanctions against Truesdale for

---

[1] The Village of Orland Park was incorrectly sued as the Town of Orland Park.

1

leaving several vexatious and abusive voice mails laden with profanity on the voicemail of some of the defendants. Dk. #12. On August 30, 2007, this Court denied Defendants' motion to dismiss the complaint as a sanction for bad faith conduct on the part of Truesdale. However, the Court admonished Truesdale and ordered her to refrain from contacting Orland Park, its employees, it agents, and the individual defendants in any way, including via telephone calls, letters, e-mails, electronic mail, text messaging or visits. Dk. # 17. The Court also directed Truesdale to have any future contact with the defendants through her counsel only and instructed the defendants to file an emergency motion should additional problems arise. Dk. # 12; Aug. 30, 2007 Tr. In spite of the Court's order, Truesdale continued to send e-mails and place telephone calls to Orland Park employees including the individual defendants. As a result, Defendants filed an emergency motion for sanctions less than a month after the Court's order. Dk. # 21. On September 20, 2007, the Court once again admonished Truesdale for her conduct, warned her that further violations could result in the dismissal of her case, and instructed her to refrain from contacting the Defendants in any way. Sept. 20, 2007 Tr.; Dk. #28. The Court entered and continued Defendants' motion to October 22, 2007 and entered a Rule to Show Cause against Truesdale for her failure to comply with the Court's August 30, 2007 order. Dk. #28.

On September 13, 2007, this Court ordered Defendants to answer or otherwise plead to the Complaint by September 27, 2007 and ordered Truesdale to respond by October 11, 2007. Dk. # 18. Defendants timely filed their Motion to Dismiss on September 26, 2007. Dk. # 26; 27. Although represented by counsel at the time, Truesdale failed to respond to Defendants' Motions.

The parties appeared for status on the Rule to Show Cause on October 22, 2007. At that

2

time, Defendants advised that Truesdale complied with the Court's August 30, 2007, and the Rule to Show Cause and Defendants' emergency motion were dismissed as moot. Dk. # 30; 31. Truesdale's attorney, Scott Kamin, failed to appear for the October 22, 2007 status. Dk. #30. Plaintiff's counsel further failed to comply with the Court's standing order to prepare a Joint Status Report.

On November 5, 2007, Truesdale's attorney requested an extension of time to file a response to Defendants' motions and the Court granted his request. Dk. # 35. Truesdale was granted an extension to November 19, 2007 to respond. Defendants were ordered to reply by December 7, 2007. Dk. # 35. Once again, Truesdale failed to respond to Defendants' Motions to Dismiss. As such, Defendants filed a motion for ruling on the pleadings in lieu of a reply on December 7, 2007. Dk. # 43. The Court granted Defendants' motion on December 12, 2007.

On March 20, 2008, while the Motions to Dismiss were pending, Defendants filed a Motion to Dismiss for lack of prosecution. Dk. # 52. Defendants advised that Truesdale failed to conduct any discovery despite the Court's order scheduling fact discovery to close on April 22, 2008.[2] Dk. # 54. Truesdale's attorney responded stating that neither party engaged in discovery and that he failed to do so because the Court was scheduled to rule on the Defendants' Motions to Dismiss. Dk. # 57.

## **STANDARD**

When considering a motion to dismiss under Rule 12(b)(6), a court must accept as true all facts alleged in the complaint and construe all reasonable inferences in favor of the plaintiff. *See*

---

[2] The parties failure to engage in discovery is violative of this Court's standing order that the pendency of a motion, such as a motion to dismiss, does not operate as a stay of discovery.

*Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). To state a claim upon which relief can be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not allege all facts involved in the claim. *See Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994). However, in order to survive a motion to dismiss for failure to state a claim, the claim must be supported by facts that, if taken as true, at least plausibly suggest that the plaintiff is entitled to relief. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). Such a set of facts must "raise a reasonable expectation that discovery will reveal evidence" of illegality. *Id.* at 1965.

Truesdale's Complaint, although not divided into numbered counts, alleges four claims against Orland Park and the Individual Defendants.[3] Counts I, II, and III seek damages against Defendants for violating Truesdale's due process rights pursuant to 42 U.S.C. § 1983 under the 4th Amendment and Count IV seeks damages against Orland Park under the Americans with Disabilities Act ("ADA").

## STATEMENT OF FACTS

Truesdale is a resident of Cook County who suffers from a mental impairment and the Individual Defendants are employed by Orland Park as police officers. Cplt. ¶¶ 1-12, pp. 1-2; ¶ 3, p. 4. In Count I, Truesdale pleads that in the summer of 2005, including May 31, 2005 and June 7, 2005, the Individual Defendants arrested her; filed seven misdemeanor complaints against her, hospitalized and committed her in violation of her due process rights.[4] Cplt. ¶ 13, p. 3m, ¶ 3, p. 4.

---

[3] Although Truesdale's Complaint is divided by headings and not numbered counts, this Court will refer to her claim as Counts I through IV for the purpose of clarity.

[4] Truesdale does not set forth the name of the individual officers who filed misdemeanor complaints against her.

The two arrests resulted in criminal prosecution. Cplt. ¶ 3, p. 4. Although innocent, Truesdale pleaded guilty to some of these complaints because her mental impairment prevented her from weighing counsel's advice to plead guilty in order to be released. Cplt. ¶ 4, p. 4. Truesdale was convicted of unspecified misdemeanors and spent more than three months in Cook County Jail. Cplt. ¶ 5, p. 5. Truesdale claims that the aforementioned arrests were made without probable cause, and thus, violated her due process rights under 42 U.S.C. § 1983. She further alleges that her arrests demonstrated Orland Park's lack of a "consistent policy to avoid discrimination and otherwise satisfy the dictates of the A.D.A." Cplt. ¶¶ 13-14, p. 3.

Truesdale further claims that on other occasions, the Individual Defendants took her to local hospitals even though she was not in need of medical services. Cplt. ¶ 16. On one of those occasions, Truesdale was released from the hospital during the day and walked through the City of Harvey destitute. Cplt. ¶ 16.[5]

Count II is a Section 1983 claim under the 4th Amendment against Defendants Guerra and Verburg. On May 31, 2005, Truesdale took her pet squirrel, "Scamper," to the Orland Park Police Station to file a complaint for conduct that occurred on our about April 23, 2005. Cplt., ¶ 2, p. 5. Guerra was the desk sergeant at the station and Truesdale told Guerra that she wished to file a complaint against a police officer driving squad car number nineteen. Cplt. ¶¶ 3-4, p. 5. Guerra left the front desk to ascertain who drove squad car number nineteen and upon his return, told Truesdale that she would be arrested if she did not leave immediately. Cplt. ¶¶ 5-6, p. 5. After ordering Truesdale to leave, Guerra, assisted by Barth, slammed Truesdale's head against the wall

---

[5] Truesdale does not allege that dates that she was detained, arrested, incarcerated, admitted, or released from the Orland Park or Harvey jails or hospitals.

breaking her glasses. Cplt. ¶ 7, p. 5. During the ensuing melee, Scamper began tearing at Truesdale's chest area and Guerra and Barth pulled back Truesdale's arms so severely that "they lost circulation and seemed likely to be torn from her shoulders." Cplt. ¶¶ 8-9, p. 5-6. Guerra ordered Verburg to remove Scamper from Truesdale's breast area and Verburg complied. Cplt. ¶ 9, p. 6. At some point, Truesdale inadvertently bumped her broken toe on an unidentified officer's foot. Cplt. ¶ 10, p. 6. Guerra signed several misdemeanor complaints against Truesdale who was processed and taken to bond court at the Circuit Court in Bridgeview, Illinois where Truesdale received an I-bond. Cplt. ¶ 11, p. 6.

Count III is a Section 1983 claim under the 4th Amendment against Lynch, Bianci, and Ford. On May 31, 2005, Truesdale was released from jail. Cplt. ¶ 2, p. 6. She, accompanied by Scamper, visited the Orland Park "B.P. store," a place where which she spent a considerable amount of time. Cplt. ¶ 2, p. 6. Defendants Lynch and Bianci, who also frequented the store, walked in, and expressed surprise that Truesdale chose to come to the B.P. store having just been released from jail and knowing that Orland Park police officers were frequent patrons of the store. Cplt. ¶ 3, p. 6. Defendant Lynch told Truesdale that if she did not leave the B.P., he would arrest her. Cplt. ¶ 4, p. 6. Defendant Lynch then took Scamper from Truesdale and told her that he would return the squirrel only if she left the B.P. Cplt. ¶ 4-5, p. 6. Defendant Bianci told Truesdale that Lynch was merely trying to placate her, and that Defendant Lynch actually intended to take Scamper to Animal Welfare where Scamper would be put to sleep. Cplt. ¶ 6, p. 6. Truesdale refused to leave without Scamper and Lynch arrested her. Cplt. ¶ 7, p. 6. During the arrest, Defendant Lynch, assisted by Defendants Bianci and Ford, grabbed Truesdale's arm, twisted it, and forced her to the floor. Cplt. ¶ 8, p. 7. While Truesdale was under arrest, Ford asked her if he had permission to enter her house

to get her pet rabbit, Wally, and Truesdale agreed. Cplt. ¶ 9, p. 7. However, Ford returned to the Orland Park Police Station without Wally and Truesdale later learned that Ford had Wally euthanized. Cplt. ¶ 10, p. 7.

Finally, Count IV alleges that Orland Park violated the ADA from the Spring to the Fall of 2005 by failing to implement a policy to protect individuals, such as Truesdale, who suffer from mental disabilities. Cplt. ¶¶ 1-4, p. 7. Truesdale claims that Orland Park discriminated against her when its agents committed, arrested and humiliated her.

## **DISCUSSION**

I. Truesdale's 42 U.S.C. § 1983 claims

Counts I, II, and III are Section 1983 claims under the 4th Amendment. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that he was deprived of a federal right, privilege, or immunity by a person acting under color of state law. *See Brown v. Budz*, 398 F.3d 904, 908 (7th Cir. 2005) (*citing Gomez v. Toledo*, 446 U.S. 635, 638 (1980)). A plaintiff must allege both § 1983 elements to survive a motion to dismiss. *See Lekas v. Briley*, 405 F.3d 602, 606 (7th Cir. 2005). In Count I, Truesdale claims that during the summer of 2005, two of the defendants signed misdemeanor complaints against her– two of which were pursued by prosecutors. Cplt. p. 4. One other unidentified defendant signed two misdemeanor complaints against Truesdale.[6] In all instances, Truesdale claims that the complaining officers did not have probable cause. She further alleges that her arrests violated her rights under the Americans with Disabilities Act ("ADA"), and that subsequent to her false arrests, unidentified individuals presented or suppressed evidence and that she pleaded guilty to "some of these complaints" even though she was innocent because her

---

[6] Truesdale does not plead whether that misdemeanor complaint resulted in prosecution.

impairment prevented her from weight counsels's advice to claim guilt in order to be released. As a result, Truesdale alleges that her due process rights were violated because she was "arrested for, charged with, and convicted of misdemeanors and spent more than three months in Cook County Jail during the summer of 2005."

Certainly, Truesdale has pleaded facts to support that the Orland Park police officers were acting under color of state law. However, Truesdale does not allege a deprivation of a fundamental right or liberty interest. *See Zorzi v. County of Putnam*, 30 F.3d 885, 895 (7th Cir. 1994) (Before a party may assert a due process argument--procedural or substantive--it must establish that it has a legitimate claim of entitlement to the right being asserted.) Truesdale's claims in Count I are pleaded as due process violations under Section 1983. Although not specified, they presumably include, false arrest, malicious prosecution, false imprisonment, and that Truesdale's rights under the ADA were violated when she was arrested by officers who knew that she suffered from a mental impairment.

Regarding Truesdale's presumed false arrest, malicious prosecution, and false imprisonment claims, to the extent Truesdale maintains that the Defendants denied her due process by causing her to suffer a deprivation of liberty resulting from arrests without probable cause, a malicious prosecution premised upon false evidence, and a resulting conviction and imprisonment, her claim is, in essence, one for false arrest, false imprisonment, and malicious prosecution, rather than a due process violation. The existence of a tort claim under state law knocks out any constitutional theory of false arrest, false imprisonment, and malicious prosecution, *McCann v. Mangialardi*, 337 F. 3d 782, 785 (7th Cir. 2003); *citing Newsome v. McCabe*, 256 F.3d 747 (7th Cir. 2001), and Illinois has common law tort actions for all three claims. *Id*.; *citing Miller v. Rosenberg*, 196 Ill. 2d 50, 749

8

N.E.2d 946, 951-52 (Ill. 2001); *Meerbrey v. Marshall Field & Co.*, 564 N.E.2d 1222, 1231 (Ill. 1990) (false arrest and false imprisonment); *Joiner v. Benton Community Bank*, 411 N.E.2d 229, 232 (Ill. 1980) (malicious prosecution). Thus, any claim Truesdale has against Defendants for false arrest, false imprisonment, and malicious prosecution should have been brought under Illinois law.[7] *Newsome*, 256 F.3d at 750.[8] Accordingly, Truesdale's false arrest, false imprisonment, and malicious prosecution claims are dismissed.

Truesdale also alleges that Defendants violated her rights under the ADA. "Congress enacted the ADA to ensure that individuals with disabilities fully enjoy the goods, services, privileges, and advantages available indiscriminately to other members of the general public." *Filson v. Big Ten Conf.*, 2006 U.S. Dist. LEXIS 89311, * 5 (N.D. Ill. 2006); *quoting Olinger v. U.S. Golf Ass'n*, 205 F.3d 1001, 1004 (7th Cir. 2000), *rev'd on other grounds*, 532 U.S. 1064 (2001); *see also*

---

[7] Truesdale likely does not have viable state law false arrest, false imprisonment, and malicious prosecution claims. If the success of Truesdale's Section 1983 claims for false arrest, false imprisonment, and malicious prosecution claims would imply the invalidity of her conviction, then her suit is barred. *Heck v. Humphrey*, 512 U.S. 477 (1994) (Heck bars any suit for damages premised on a violation of civil rights if the basis for the suit is inconsistent with or would undermine the constitutionality of a conviction or sentence.) To state such claims, Truesdale must allege, among other things, that the judicial proceedings brought against her were terminated in her favor, *Curtis v. Bembenek*, 48 F.3d 281, 286 (7th Cir. 1995) and Truesdale's allegations suggest otherwise. Should Truesdale choose to amend her complaint, she is cautioned to comport with Federal Rule of Civil Procedure 11 in this regard. It is noteworthy that a plaintiff can plead all the elements of a false arrest claim on the day of the arrest, regardless of the later proceedings. *Sneed v. Rybicki*, 146 F.3d 478, 481 (7th Cir. 1998) (*citing Booker v. Ward*, 94 F.3d 1052, 1056 (7th Cir. 1997)). In other words, false arrest claims are not inevitably barred. *Id.*; ("[A] wrongful arrest claim, like a number of Fourth Amendment claims, does not inevitably undermine a conviction; one could have a successful wrongful arrest claim and still have a perfectly valid conviction.")

[8] Truesdale has not pleaded that her misdemeanor cases went to trial. However, to the extent Truesdale intended to allege that defendants concealed exculpatory evidence from prosecutors, denying her the right to a fair trial, she is not precluded from asserting a constitutional tort claim on this basis. *Newsome*, 256 F.3d at 752 (available state law remedy for malicious prosecution bars due process claim for prosecution without probable cause but acknowledging viability of a § 1983 claim based on Brady violations). However, Truesdale has not adequately alleged such a claim in her Complaint.

*Wisconsin Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 750 (7th Cir. 2006) (ADA designed "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities") (citing 42 U.S.C. § 12101(b)(1), (b)(4)). "The ADA's mandate extends to three broad, yet distinct, areas: employment (Title I), public services (Title II), and places of public accommodation (Title III)." *Id.*; *citing Olinger*, 205 F.3d at 1004; see also *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675, 121 S.Ct. 1879, 149 L.Ed.2d 904 (2001). Truesdale's ADA claim does not invoke a particular statute or title. Title I does not apply because Truesdale is not an employee of Orland Park and Title III does not apply because none of the Defendants is a private entity.[9]

Under Title II, a public entity is prohibited from discriminating against a qualified individual "who, with or without reasonable modifications to rules, policies, or practices, . . . meets the eligibility requirements for the receipt of services of the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). Discrimination is shown by establishing evidence "that (1) the defendant intentionally acted on the basis of the disability, (2) the defendant refused to provide a reasonable modification, or (3) the defendant's rule disproportionally impacts disabled people." *Washington v. Indiana High School Athletic Assoc., Inc.*, 181 F.3d 840, 846 (7th Cir. 1999). To state a claim under Title II of the ADA, Truesdale must allege that she is a qualified individual with a disability and that she was denied benefits or discriminated against because of her

---

[9] Section 12112 provides: "(a) General rule. No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation. 42 U.S.C. § 12182(a).

disability. 42 U.S.C. § 12132. Here, Truesdale references her mental disability in the Complaint, but does not plead that she is a qualified individual with a disability.[10] Moreover, even when read liberally pursuant to federal pleading requirements, the factual contentions in Truesdale's Complaint do not sufficiently allege discrimination through either intentional conduct, the denial of reasonable accommodation, or disparate impact. Truesdale does not identify the services, programs, or activities provided by Orland Park that she was eligible to receive, but was denied on the basis of her disability. Additionally, Truesdale does not identify the discriminatory acts which would enable her to assert a claim under Title II. Accordingly Truesdale's claims under Count I couched under the ADA are dismissed.[11]

In Count II, Truesdale brings claims against Guerra and Verberg for excessive force under the Fourth Amendment and Section 1983 and false arrest for "several misdemeanor complaints." Truesdale's false arrest claims against Guerra and Verberg are dismissed for the reasons previously stated.[12] Regarding Truesdale's excessive force claim, while the right to make an arrest necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it," *Graham v. Connor*, 490 U.S. 386, 396 (1989), the Fourth Amendment prohibits the use of excessive force during the execution of a seizure. *Id.* at 395 (the Fourth Amendment's objective reasonableness test is the appropriate standard for evaluating excessive force claims).

---

[10] Under the ADA, a person is "disabled" if she: (a) has a physical or mental impairment that substantially limits one or more of the major life activities of such individual;(b) has a record of such impairment; or (c) is regarded as having such an impairment. *Mattice v. Mem'l Hosp. of S. Bend*, 249 F.3d 682, 684 (7th Cir. 2001); 42 U.S.C. § 12102(2).

[11] Truesdale's ADA claims against Orland Park in Count IV are addressed below.

[12] As previously stated, Truesdale likely does not have a viable state-law false arrest claim. *See Heck*, 512 U.S. 477.

11

In order to bring a § 1983 excessive force or unlawful arrest claim under the Fourth Amendment, a plaintiff must first sufficiently allege that she was seized. *See County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) ("The Fourth Amendment covers only "searches and seizures"); *Graham*, 490 U.S. at 388; *Kernats v. O'Sullivan*, 35 F.3d 1171, 1177 (7th Cir. 1994) (to state a Fourth Amendment cause of action plaintiff must prove that defendant's conduct constituted a seizure and that the seizure was unreasonable). Truesdale pleaded that officers Guerra and Verberg arrested her and that she was taken to bond court at the Circuit Court in Bridgeview, Illinois. Accordingly, Truesdale pleaded enough facts to show that she was seized in that she was not free to walk away. *See Tennessee v. Garner*, 471 U.S. 1, 7 (1985) (a seizure occurs "[w]henever an officer restrains the freedom of a person to walk away"). Truesdale must also plead that the officers used "greater force than was reasonably necessary to make the arrest." *Lester v. City of Chi.*, 830 F.2d 706, 713 (7th Cir. 1987). Truesdale pleaded that Guerra slammed her head against the wall breaking her glasses and "otherwise caused her unnecessary pain" during her arrest. Truesdale also pleaded that the officers pulled her arms so severely that they lost circulation and "seemed likely to be torn from her shoulders." Accordingly, Truesdale's Section 1983 excessive force claim survives.

In Count III, Truesdale brings claims against Officers Lynch, Bianci, and Ford for excessive force.[13] Here, Truesdale alleges that Officers Lynch, Bianci, and Ford arrested her at the B.P. station and that Lynch grabbed and twisted her arm unnecessarily and repeatedly causing severe pain. According to Truesdale, Ford and Bianci "assisted in the arrest." Truesdale's allegations of an arrest are enough to sustain 12(b)(6) dismissal with respect to the "seizure" requirement of an excessive

---

[13] Officers Lynch, Bianci, and Ford arrested Truesdale on May 31, 2005, but Truesdale does not allege in Count III that the arrest was made without probable cause.

12

force claim. *See Tennessee*, 471 U.S. at 7. Truesdale has pleaded sufficient facts against Lynch to withstand dismissal because she pleaded that he unnecessarily twisted her arm in the arrest, and thus, pleaded that Lynch used greater force than was reasonably necessary to make the arrest. However, Truesdale failed to pleaded that Ford and Bianci used greater force than necessary when they assisted in her arrest, and thus, Count III is dismissed as to Bianci and Ford.[14]

II. Count IV– Truesdale's ADA claim against Orland Park Police Department

In Count IV, Truesdale complains that the Orland Park Police Department "never attempted to comply with the ADA" during the many contacts its officers had with Truesdale during the Spring of 2005 to the Fall of 2005. For example, Truesdale complains that Orland Park officers discriminated against her by trying to have her committed, arresting her, and "violating all decency in dealing with Plaintiff and her mental disabilities."

Truesdale's ADA claim asserted in Count IV fails for the reasons set forth above; namely, Truesdale's ADA claim does not invoke a particular statute or title. Title I does not apply because Truesdale is not an employee of Orland Park and Title III does not apply because none of the Defendants are private entities. To state a claim under Title II of the ADA, Truesdale must allege that she is a qualified individual with a disability and that she was denied benefits or discriminated against because of her disability. 42 U.S.C. § 12132. Here, Truesdale references her mental disability in the Complaint, but does not plead that she is a qualified individual with a disability. Moreover, even when read liberally pursuant to federal pleading requirements, the factual contentions in Truesdale's Complaint do not sufficiently allege discrimination through either

---

[14] Truesdale complains that Ford euthanized her pet Wally after she was arrested, but did not assert any sort of claim against Ford for doing so.

intentional conduct, the denial of reasonable accommodation, or disparate impact. Truesdale does not identify the services, programs, or activities provided by Orland Park that she was eligible to receive, but was denied on the basis of her disability. Additionally, Truesdale does not identify the discriminatory acts which would enable her to assert a claim under Title II. Accordingly Truesdale's claims under Count I couched under the ADA are dismissed.[15]

Additionally, if Truesdale decides to amend her Complaint, her claims against "The Town of Orland Park" should be amended to reflect that she has mistakenly sued "The Town of Orland Park" instead of "The Village of Orland Park." Moreover, Truesdale's Complaint pleads allegations against the Orland Park Police Department. Because the Orland Park Police Department has no independent legal existence and is a department within the Village of Orland Park, Truesdale should amend her Complaint to plead allegations against the Village, and not the police department.

III. Defendants' Motion to Dismiss for Failure to Prosecute, Truesdale's Motion to Extend Discovery, and Defendants' Motion to Strike

Defendants also move to dismiss Truesdale's Complaint for want of prosecution. In addition to Truesdale's failure to respond to the pending motions to dismiss despite the fact that the Court granted her several extensions, Truesdale also failed to conduct any discovery prior to the close of

---

[15] Even if Truesdale intended to hold Orland Park Police Department, a municipal government body, liable under § 1983, Truesdale must demonstrate that the deprivation of her constitutional rights was caused by "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or by an unwritten custom or practice so well established as to amount to a government policy. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). Such a policy or custom must "reflect deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 411 (1997). Truesdale's claim requires her to prove both (1) that her constitutional rights were actually violated by the deliberate indifference of a municipal actor, *see Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Monell*, 436 U.S. at 694; *Harris v. City of Marion*, 79 F.3d 56, 58 (7th Cir. 1996); and (2) that there is "a direct causal link between the municipal action and the deprivation of federal rights." *Brown*, 520 U.S. at 404. Even if Truesdale intended to plead a *Monell* claim against Orland Park, her Complaint falls far short of sufficiently pleading a viable cause of action, and therefore, is dismissed.

fact discovery in contradiction to this Court's standing order.[16] In Response to Defendants' Motion to Dismiss for Failure to Prosecute, Truesdale seeks an extension of time to conduct discovery and argues that neither party conducted discovery due to the pending motion to dismiss.

Federal rule 41(b) provides that a defendant may move for dismissal of an action or of any claim against the defendant on the basis that the plaintiff has failed to prosecute or to comply with the Rules of Civil Procedure and any order of the Court. Fed. R. Civ. Pro. 41(b). The Court may dismiss the action when there is a "clear record of delay or contumacious behavior" including unexplained absences from court ordered conferences and repeated appearances and petitions to withdraw by different plaintiff's counsel. *Daniels v. Brennan*, 887 F. 2d 783, 785 (7th Cir. 1989) (*see also Beshear v. Weinzapfel*, 474 F. 2d 127 (7th Cir. 1973)(unexplained absences from court ordered conferences and repeated appearances and petitions to withdraw by different plaintiff's counsel reflect a lack of prosecutive intent). The Court has the power to dismiss a case for failure to prosecute or failure to comply with court orders because it protects the litigants and aids the court in keeping control over its own docket. *Ladien v. Astrachan*, 128 F.3d 1051, 1056-57 (7th Cir. 1997). The decision whether to dismiss a suit for failure to prosecute should, ideally, take full and careful account of the frequency and magnitude of the plaintiff's failures to comply with deadlines for prosecution of the suit, the effect of the failures in taxing the judge's time and disrupting the judge's calendar to the prejudice of other litigants, the prejudice if any to the defendant from the plaintiff's dilatory conduct, the probable merits of the suit, and the consequences of dismissal for the social objectives of this type of litigation that the suit represents." *Jackson v. City of Chicago*,

---

[16] Per the Court's standing order, "Parties also are reminded that the pendency of a motion, such as a motion to dismiss, does not operate as a stay of discovery."

2004 U.S, Dist. LEXIS 23548, * 14 (N.D. Ill. 2004). Even if Truesdale's counsel contributed to her failure to prosecute her claims, Truesdale retained her counsel, and therefore, is bound by her counsel's acts. *Daniels v. Brennan*, 887 F.2d 783, 788 (7th Cir. 1989) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633-34 (1962) (*see also Pyramid Energy v. Heyl & Patterson*, 869 F.2d 1058, 1061-62).

Although this Court finds that there is a "clear record of delay or contumacious behavior" including the failure to respond to the pending motion to dismiss, failure to conduct any discovery since the case's inception, and failure to comply with the Court's orders and standing orders, a district court ordinarily may not dismiss a case for want of prosecution without first providing an explicit warning to the plaintiff. *Sharif v. Wellness Intern. Network, Ltd.*, 376 F.3d 720, 725 (7th Cir. 2004); *see also Ball v. City of Chicago*, 2 F.3d 752, 760 (7th Cir. 1993). Certainly, that is not the case here. Plaintiff has failed to act appropriately by contacting Defendants directly and was warned that her conduct would result in dismissal. Her counsel was given every opportunity to respond to pending motions and still failed to do so. This is not the typical case where a Plaintiff may not be aware that her actions will results in the potential dismissal of her case. Yet, due in significant part to the fact that Plaintiff's alleged mental health conditions may have contributed to her attorney's inability to respond timely (although this concession is a generous interpretation on the part of the Court), the Court will not dismiss for want of prosecution at this time. However, Truesdale and her counsel are hereby warned that any further failure to conform to the rules, attend court appearances, or timely file motions, responses, or amendments to her Complaint, or to otherwise prosecute her case, will result in dismissal with prejudice.

IV.  Conclusion

In accordance with this Order, Counts I and IV are dismissed in their entirety. Truesdale's false arrest, false imprisonment, and malicious prosecution claims in Counts II and III are dismissed. Truesdale's excessive force claims in Counts II and III against Guerra and Verberg, and Lynch survive and her excessive force claims against Bianci and Ford are dismissed. Truesdale is given leave to amend her complaint to conform to this Court's Memorandum and Opinion Order by May 9, 2008. Failure to file an Amended Complaint by May 9, 2008 will result in dismissal of the complaint with prejudice. Further status is set for May 12, 2008 at 9:00 a.m.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: May 1, 2008